UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE APPLICATION OF THE UNITED
STATES OF AMERICA FOR AN ORDER
PURSUANT TO 18 U.S.C. § 2703(d)

Misc. No. 10GJ3793
No. 1:11DM3
No. 1:11EC3

**MOTION OF REAL PARTIES IN INTEREST FOR STAY
AND INJUNCTION PENDING APPEAL**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................... ii

**ARGUMENT** ...........................................................................................................1

    I.      THE STANDARD GOVERNING A STAY PENDING APPEAL. ...............................1

    II.    THE COURT SHOULD STAY ITS NOVEMBER 10 ORDER AND ENJOIN
            ENFORCEMENT OF THE TWITTER ORDER. ............................................3

          A.    This Case Presents Substantial Issues On Appeal ....................................................3

          B.    Absent A Stay, Movants Will Suffer Irreparable Harm .........................................7

          C.    The Government Will Not Be Harmed Significantly By A Stay............................8

          D.    The Public Interest Favors A Stay ......................................................................10

**CONCLUSION** .....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Cavel Int'l, Inc. v. Madigan*,
  500 F.3d 544 (7th Cir. 2007) ............................................................................... 2

*Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*,
  240 F. Supp. 2d 21 (D.D.C. 2003) ................................................................... 4, 8, 9

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ............................................................................................ 8

*Gibson v. Fla. Legislative Inv. Comm.*,
  372 U.S. 539 (1963) ............................................................................................ 7

*Giovani Carandola, Ltd. v. Bason*,
  303 F.3d 507 (4th Cir. 2002) ............................................................................. 10

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ................................................................................... 1, 3, 10

*In re Application of the United States*,
  620 F.3d 304 (3d Cir. 2010) ............................................................................... 6

*In re Application of the United States*,
  736 F. Supp. 2d 578 (E.D.N.Y. 2010) ............................................................. 5, 6

*In re Application of the United States*,
  747 F. Supp. 2d 827 (S.D. Tex. 2010) ............................................................... 5

*In re Application of the United States*,
  No. 10-2188-SKG, 2011 U.S. Dist. LEXIS 85638 (D. Md. Aug. 3, 2011) ............... 5

*In re Application of the United States*,
  No. 10-MC-897 (NGG), 2011 U.S. Dist. LEXIS 93494 (E.D.N.Y. Aug. 22, 2011) ........... 5

*In re Grand Jury 87-3 Subpoena*,
  955 F.2d 229 (4th Cir. 1992) ............................................................................... 7

*Jewish War Veterans of U.S., Inc. v. Gates*,
  522 F. Supp. 2d 73 (D.D.C. 2007) ....................................................................... 8

*Legend Night Club v. Miller*,
  637 F.3d 291 (4th Cir. 2011) ............................................................................. 10

*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
  661 F. Supp. 2d 548 (E.D. Va. 2009) ...................................................... 2, 3, 8, 10

ii

*Perlman v. United States*,
 247 U.S. 7 (1918) ................................................................................................. 8

*Providence Journal Co. v. FBI*,
 595 F.2d 889 (1st Cir. 1979) ........................................................................... 8, 10

*Reiserer v. United States*,
 No. C04-0967C, 2005 U.S. Dist. LEXIS 36229 (W.D. Wash. July 15, 2005) ...................... 4, 7

*United States v. Jones*,
 No. 10-1259 (U.S. argued Nov. 8, 2011) ................................................................. 5

*United States v. Phillip Morris Inc.*,
 314 F.3d 612 (D.C. Cir. 2003) .............................................................................. 8

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
 559 F.2d 841 (D.C. Cir. 1977) .............................................................................. 2

*Wash. Speakers Bureau Inc. v. Leading Auths., Inc.*,
 No. 98cv534, 1999 U.S. Dist. LEXIS 5148 (E.D. Va. 1998) ......................................... 4

**Statutes**

18 U.S.C. § 2703 ..................................................................................... passim

**Other Authorities**

Adam Liptak, *Court Casts a Wary Eye on Tracking by GPS*,
 N.Y. Times, Nov. 9, 2011, at A18 .......................................................................... 5

Julia Angwin, *Secret Orders Target Email*,
 Wall St. J., Oct. 10, 2011, at A1 ........................................................................... 9

Laurie Ure, *WikiLeaks Witness Takes the Fifth*, CNN (June 16, 2011),
 http://www.cnn.com/2011/CRIME/06/15/virginia.wikileaks.grand.jury/ ......................... 9

**Rules**

Fed. R. Civ. P. 62 ............................................................................................. 1

Real Parties in Interest Jacob Appelbaum, Rop Gonggrijp, and Birgitta Jonsdottir ("movants") move the Court under Fed. R. Civ. P. 62 and its inherent authority to stay the Order entered in this action on November 10, 2011 (Dkt. No. 84), and to enjoin enforcement of Magistrate Judge Buchanan's December 14, 2010 Order under 18 U.S.C. § 2703(d) directed to Twitter (the "Twitter Order"), pending movants' appeal to the United States Court of Appeals for the Fourth Circuit.

## ARGUMENT

In its November 10 Order and accompanying opinion (Dkt. No. 85), this Court decided novel procedural and substantive issues concerning the validity of the § 2703(d) order directed to Twitter.[1]  To preserve the status quo while movants appeal those issues, the Court should stay its Order and enjoin enforcement of the Twitter Order.  Absent a stay, movants will suffer irreparable harm from the production of their private information.  By contrast, a stay will cause only minimal, temporary harm to the government.  And the public interest will be served by the preservation of movants' privacy pending full appellate consideration of the substantial issues this case presents.

## I.      THE STANDARD GOVERNING A STAY PENDING APPEAL.

Courts consider four factors in determining whether to grant a stay pending appeal:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see, e.g., MicroStrategy,*

---

[1] Movants are also appealing the Court's November 10 Order to the extent it denied the motion to unseal and the motion for public docketing in this and related matters.  Those aspects of the Court's Order are not at issue in this motion for a stay, and are not addressed further here.

*Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 558 (E.D. Va. 2009).[2]

"Many courts view the first two factors as a sliding scale, with the greater the harm to the movant requiring a lesser showing of the likelihood of success on appeal." *MicroStrategy*, 661 F. Supp. 2d at 558; *see, e.g., Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007) (injunction granted pending appeal where appellant makes strong showing of irreparable harm, even though court of appeals "do[es] not suggest that [appellant] has a winning case or even a good case"); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) ("The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.").

In *MicroStrategy*, Judge Friedman of this Court applied the "sliding scale" approach to grant a stay pending appeal. At issue was whether a document belonging to MicroStrategy retained its trade secret status. The district court concluded that it did not and thus dissolved an injunction that had barred a competitor—Business Objects—from possessing and using the document. MicroStrategy sought a stay pending appeal. Applying the four-factor test outlined above, the court concluded that MicroStrategy "ha[d] not raised 'a substantial legal question' indicating [its] likelihood of success on appeal." 661 F. Supp. 2d at 560. The court found, however, that MicroStrategy could be irreparably harmed by the dissolution of the injunction, because "the original purpose of the injunction would have been defeated, and once the information in the [document] is disseminated, it cannot be retrieved and made private again." *Id*. at 561.

Turning to the third factor, the court found that "[s]taying the dissolution of the

---

[2] The same standards apply to an injunction pending appeal. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007). Thus, the Court need not differentiate between movants' request for a stay pending appeal of this Court's November 10 Order and their related request for an injunction pending appeal against enforcement of the Twitter Order.

injunction, and continuing to prohibit Business Objects from possessing the document would not cause any irreparable harm to Business Objects, especially when compared to the irreparable harm MicroStrategy could suffer if the dissolution was not stayed." *Id*. at 562.  And the court found that a stay would serve the "public interest" by "ensur[ing] that the document remains confidential until a final determination as to the value of the document is made." *Id*.  Granting the stay, the court summarized its analysis as follows:

> While the court does not believe that its February 10, 2009 decision was in error, or that MicroStrategy has made a strong showing of its likelihood of success on appeal, the court does believe that MicroStrategy could suffer irreparable harm if the court does not stay the dissolution of the injunction.  Additionally, the court finds that the harms Business Objects would suffer if the dissolution were to be stayed are minimal, and are the same harms Business Objects has been suffering since the injunction was imposed.  Business Objects has not identified any new or additional burdens it would suffer if the dissolution of the injunction were stayed while the appeal is pending.  Finally, the public interest weighs in favor of preserving the confidentiality of the document until a final determination can be made as to its trade secret status.

*Id*.  As discussed below, the *MicroStrategy* analysis demonstrates that a stay and injunction pending appeal are appropriate here as well.

## II.     THE COURT SHOULD STAY ITS NOVEMBER 10 ORDER AND ENJOIN ENFORCEMENT OF THE TWITTER ORDER.

Applying the four *Hilton* factors, the Court should stay its November 10 Order and enjoin enforcement of the Twitter Order pending movants' appeal to the Fourth Circuit.

### A.     This Case Presents Substantial Issues On Appeal.

The Court has issued a lengthy and thoughtful opinion rejecting movants' arguments for vacating the Twitter Order.  The Court undoubtedly believes that it has addressed all issues correctly.  But a district court may grant a stay even if it has confidence in its ruling.  To obtain a stay, in other words, the losing party does not have to persuade the district judge "'that his or her decision was probably incorrect.'"  *MicroStrategy, Inc.*, 661 F. Supp. 2d at 559 (quoting *Wash.*

*Speakers Bureau, Inc. v. Leading Auths., Inc.*, No. 98cv534, 1999 U.S. Dist. LEXIS 5148, at *4-*5 (E.D. Va. 1998)).

A significant factor in assessing the weight of the issues on appeal is their novelty. If a party's position on appeal flies in the face of settled law—especially settled law from the Supreme Court or the court of appeals for the circuit in which the district court sits—the issue is likely insubstantial for purposes of a stay motion. *See, e.g., Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (no substantial issue if a claim is "utterly unsupported by legal authority and repeatedly rejected by the courts"). By contrast, if the issue is one of first impression in the relevant jurisdiction, it is likely to be considered substantial. *See, e..g., id.* (issue is "substantial" where it is "novel" and "admittedly difficult"); *Reiserer v. United States*, No. C04-0967C, 2005 U.S. Dist. LEXIS 36229, at *4 (W.D. Wash. July 15, 2005) (issue is "serious" in stay pending appeal context where issue is "novel" and "a reasonable jurist could come to a different conclusion").

Under these standards, the issues presented by this appeal are substantial. Movants focus here, by way of example, on three of those issues: whether movants have a reasonable expectation of privacy in the information contained in the electronic records covered by the Twitter Order; whether Magistrate Judge Buchanan had discretion to require a warrant based on probable cause even if the statutory requirements of § 2703(d) were met; and whether the Twitter Order was unconstitutionally overbroad in violation of the First Amendment.

Addressing the first issue, this Court acknowledged that "[n]either the Supreme Court nor this Circuit has clearly addressed the treatment of IP addresses under the Fourth Amendment." Dkt. No. 85 at 24. The central question in deciding movants' Fourth Amendment claim is how to apply the "reasonable expectation of privacy" standard in a world where ordinary personal

interactions require disclosure of ever-increasing amounts of previously private data, often accompanied by purported "consent"—like the Twitter privacy policy at issue here.  *See, e.g., In re Application of the United States*, No. 10-MC-897 (NGG), 2011 U.S. Dist. LEXIS 93494, at *41 (E.D.N.Y. Aug. 22, 2011) ("It is time that the courts begin to address whether revolutionary changes in technology require changes to existing Fourth Amendment doctrine.").  The amicus briefs (which the Court found helpful to its decision, *see* Dkt. No. 85 at 2 n.1) highlight the difficulty in applying pre-Internet precedents to determine what expectations of privacy society considers reasonable under evolving technological conditions.

Movants' concern about the locational and associational data that the Twitter Order would require to be revealed echoes the concerns in the GPS surveillance and cell site location information cases now confronting the courts (including the Supreme Court).[3]  Here, as in those cases, the broad question is whether government collection of information that individuals "voluntarily" disclose can violate a reasonable expectation of privacy, where such disclosure is a required by-product of much personal activity in the digital age and where the tools of electronic monitoring are increasingly comprehensive and intrusive.  As Magistrate Judge James Orenstein

---

[3] *See, e.g., United States v. Jones*, No. 10-1259 (U.S. argued Nov. 8, 2011) (whether the Fourth Amendment requires the government to obtain a warrant to conduct GPS tracking); *In re Application of the United States*, 2011 U.S. Dist. LEXIS 93494 (E.D.N.Y. Aug. 22, 2011) (historic cell site location information requires Fourth Amendment warrant); *In re Application of the United States*, No. 10-2188-SKG, 2011 U.S. Dist. LEXIS 85638 (D. Md. Aug. 3, 2011) (acquisition of location data through cell site information and cell phone tracking through GPS technology implicates reasonable expectation of privacy and requires warrant under the Fourth Amendment); *In re Application of the United States*, 747 F. Supp. 2d 827 (S.D. Tex. 2010) (historic cell site location information requires Fourth Amendment warrant); *In re Application of the United States*, 736 F. Supp. 2d 578 (E.D.N.Y. 2010) (same).  Just how substantial and novel—and complicated—these issues are was made clear by the recent Supreme Court oral argument in *Jones*.  *See, e.g.*, Adam Liptak, *Court Casts a Wary Eye on Tracking by GPS*, N.Y. Times, Nov. 9, 2011, at A18 (summarizing the oral argument and noting that "[t]he fit between 18th-century principles and 21st-century surveillance seemed to leave several justices frustrated").  Given that the Court's decision in *Jones* may significantly affect this case, premature disclosure of movants' private information before these legal issues are fully resolved would be especially inappropriate.

put it in a similar case:

> [T]he Fourth Amendment's concept of an "unreasonable" intrusion into one's personal affairs, by its very nature, is not stuck in the amber of the year 1791. That concept must instead evolve along with the myriad ways in which humans contrive to interact with one another.  As the threads that connect us are increasingly entrusted into the hands of strangers who promise to make those connections broader, more intimate, more efficient, and more productive, a jurisprudence that mechanically relies on that fact to disclaim the need for meaningful oversight of the government's investigative techniques unwisely abandons the critical and continuing task of identifying the expectations of privacy our society is prepared to recognize as reasonable.

> The Fourth Amendment cannot properly be read to impose on our populace the dilemma of either ceding to the state any meaningful claim to personal privacy or effectively withdrawing from a technologically maturing society.

*In re Application of the United States*, 736 F. Supp. 2d 578, 595-96 (E.D.N.Y. 2010).  The Fourth Amendment issue that Magistrate Judge Orenstein identifies—the evolving concept of a reasonable expectation of privacy—is substantial in the context of the locational and associational information revealed through use of Twitter just as surely as it is in the context of similar information revealed through the use of a cell phone.

On the second issue—Magistrate Judge Buchanan's discretion to require a warrant based on probable cause even if the statutory requirements of § 2703(d) were met—this Court acknowledged that its decision conflicts squarely with the Third Circuit's decision in *In re Application of the United States*, 620 F.3d 304 (3d Cir. 2010).  Dkt. No. 85 at 48-52.  The Court advances a trenchant critique of the Third Circuit's reasoning.  But the two distinguished Third Circuit judges who joined the majority opinion in *In re Application of the United States* surely are "reasonable jurists."  Because "reasonable jurist[s]" not only "could come to a different conclusion" concerning the Magistrate Judge's discretion under § 2703(d) to require a warrant based on probable cause, but in fact *have* come to different conclusions, this issue must be considered "serious" for purposes of this motion for a stay.  *Reiserer*, 2005 U.S. Dist. LEXIS

36229, at *4.

Finally, the First Amendment concerns with the breadth of the Twitter Order—namely, the fact that the Order seeks detailed information about all of movants' communication activities on Twitter, regardless of any potential connection to WikiLeaks—also raise substantial issues not yet resolved by the Fourth Circuit.  *See, e.g.*, *Gibson v. Fla. Legislative Inv. Comm.*, 372 U.S. 539, 546 (1963) (where "an investigation . . . intrudes into the area of constitutionally protected rights of speech, press, association and petition," the government must "convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest"); *In re Grand Jury 87-3 Subpoena*, 955 F.2d 229, 232-34 (4th Cir. 1992) (considering, in *dicta*, how the First Amendment affects the standards governing grand jury investigations, but expressly declining to decide "the 'First Amendment versus Grand Jury' dilemma" that other circuits have resolved by requiring the government to satisfy the "substantial relationship" test.

These and the other significant and novel issues presented by movants' appeal deserve to be decided by the Fourth Circuit before movants' private data is disclosed.

### B.       Absent A Stay, Movants Will Suffer Irreparable Harm.

Movants understand from government counsel that, despite the pendency of movants' appeal, the government is now taking the position that Twitter must comply promptly with Magistrate Judge Buchanan's § 2703(d) order.[4]

If Twitter is forced to produce the requested information, movants will have suffered irreparable harm:  their personal data will have been turned over to the government, and its

---

[4] The government previously agreed not to seek to force Twitter to provide any information in response to the Twitter Order pending movants' challenge of the Twitter Order before this Court. Given the government's new position, counsel for Twitter has informed movants' counsel that, absent a stay, Twitter may be forced to comply with the Twitter Order despite the existence of movants' appeal.

confidentiality will have been lost forever.  In the words of Judge Friedman, "[O]nce the information in the [Twitter records] is disseminated, it cannot be retrieved and made private again." *MicroStrategy, Inc.*, 661 F. Supp. 2d at 561.  As one court similarly observed in the FOIA context, "the irreparable harm to [movants] lies in the fact that 'once the documents are surrendered pursuant to [this Court's] order, confidentiality will be lost for all time.  The status quo could never be restored . . . Failure to grant a stay will entirely destroy appellants' rights to secure meaningful review.'" *Ctr. for Int'l Envtl. Law*, 240 F. Supp. 2d at 23 (quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)) (granting stay pending appeal in FOIA case); *see also United States v. Phillip Morris Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) ("disclosure of privileged documents to an adverse party" constitutes "irreparable harm"); *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 81 (D.D.C. 2007) (loss of protection of Speech or Debate Clause from disclosure of documents constitutes irreparable harm).

  This potential for irreparable harm is precisely why the Supreme Court has made clear that individuals like movants must be permitted to challenge government attempts to obtain their information from third parties before compliance where their constitutional rights are potentially affected.  *See, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 & n.14 (1975); *Perlman v. United States*, 247 U.S. 7 (1918) (establishing the "Perlman exception" to the general rule that orders compelling grand jury testimony or denying motions to quash grand jury subpoenas are not appealable final orders, where an individual whose information is sought from a third party raises a constitutional challenge to the government request).

  **C. The Government Will Not Be Harmed Significantly By A Stay.**

  For two principal reasons, the government will not be harmed significantly by a stay pending appeal.

First, a stay will cause only a negligible impediment to the government's WikiLeaks investigation.  The requested stay covers a single § 2703(d) order to a single Internet service provider relating only to the three movants.  The investigation can continue unabated on all other fronts.  The grand jury can continue to receive testimony, and it can consider evidence gathered through subpoenas, through search warrants, and through § 2703(d) orders concerning the accounts of persons other than movants.  Indeed, that is exactly what has apparently happened during the pendency of this litigation.  *See, e.g.*, Laurie Ure, *WikiLeaks Witness Takes the Fifth*, CNN (June 16, 2011), http://www.cnn.com/2011/CRIME/06/15/virginia.wikileaks.grand.jury/. The grand jury can even consider evidence concerning movants obtained through § 2703(d) orders served on ISPs other than Twitter without movants' knowledge.[5]  Again, that also appears to have occurred here.  *See* Julia Angwin, *Secret Orders Target Email*, Wall St. J., Oct. 10, 2011, at A1.

Second, the minimal impediment that a stay will cause to the investigation can be reduced further by conditioning the stay on movants' timely request that their appeal be expedited.  *See, e.g., Ctr. for Int'l Envtl. Law*, 240 F. Supp. 2d at 24.  Movants have no objection to the imposition of such a condition.  Given that the government has not previously taken the position that delay in receiving the requested information from Twitter was significantly prejudicing its ability to conduct its investigation and that the government agreed not to seek to enforce the Twitter Order while the matter was before this Court, any slight further delay cannot now be deemed significant.

A stay will thus deprive the government of a limited sliver of information for a brief period of time (assuming it succeeds on appeal).  "Weighing this . . . hardship against the total

---

[5] If movants were aware of such orders in advance of production, they would of course object to them—but Twitter is the only ISP to date to obtain permission to disclose to movants, in advance of production, that it had received a § 2703(d) order concerning their accounts.

and immediate divestiture of [movants'] rights to have effective review in [the court of appeals]," there is no doubt that "the balance of hardship . . . favor[s] the issuance of a stay." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979).

### D.   The Public Interest Favors A Stay.

The public interest favors preserving the privacy of movants' personal information until a final determination of movants' clams has been made.  *See, e.g., MicroStrategy*, 661 F. Supp. 2d at 562 ("[T]he public interest weighs in favor of preserving the confidentiality of the document until a final determination can be made as to its trade secret status.").  That is especially the case here because movants have raised constitutional, as well as statutory, challenges to the Twitter Order.  *See, e.g., Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) ("upholding constitutional rights is in the public interest") (citing *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002)).

## CONCLUSION

For the foregoing reasons, the four *Hilton* factors weigh in favor of staying this Court's November 10 Order and enjoining enforcement of the Twitter Order pending appeal.


Dated: December 2, 2011                    By:  /s/ Rebecca K. Glenberg
                                           Rebecca K. Glenberg, VSB No. 44099
                                           AMERICAN CIVIL LIBERTIES UNION
                                                OF VIRGINIA FOUNDATION, INC.
                                           530 E. Main Street, Suite 310
                                           Richmond, VA 23219
                                           Telephone:    804.644.8080
                                           Facsimile:    804.649.2733
                                           Email: rglenberg@acluva.org

                                           Aden J. Fine (admitted *pro hac vice*)
                                           AMERICAN CIVIL LIBERTIES UNION
                                                FOUNDATION
                                           125 Broad Street, 18th Floor
                                           New York, NY 10004
                                           Telephone:    212.549.2500

Facsimile:      212.549.2651
Email: afine@aclu.org

Cindy A. Cohn (admitted *pro hac vice*)
Lee Tien (admitted *pro hac vice*)
Kevin S. Bankston (admitted *pro hac vice*)
Marcia Hofmann (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:      415.436.9333 x108
Facsimile:      415 436.9993
Email: cindy@eff.org
Email: tien@eff.org
Email: bankston@eff.org
Email: marcia@eff.org

Jonathan Shapiro
GREENSPUN, SHAPIRO, DAVIS
    & LEARY, P.C.
3955 Chain Bridge Road
Second Floor
Fairfax, VA 22030
Telephone:      703.352.0100
Facsimile:      703.591.7268
Email: js@greenspunlaw.com

**Attorneys for BIRGITTA JONSDOTTIR**

Dated: December 2, 2011              By: /s/ John K. Zwerling_____
John K. Zwerling, VSB No. 8201
Stuart Sears, VSB No. 71436
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA 22314
Telephone:    703.684.8000
Facsimile:    703.684.9700
Email: JZ@Zwerling.com
Email: Chris@Zwerling.com
Email: Andrea@Zwerling.com
Email: Stuart@Zwerling.com

John W. Keker (admitted *pro hac vice*)
Rachael E. Meny (admitted *pro hac vice*)
Steven P. Ragland (admitted *pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:    415.391.5400
Facsimile:    415.397.7188
Email: jkeker@kvn.com
Email: rmeny@kvn.com
Email: sragland@kvn.com

**Attorneys for JACOB APPELBAUM**

Dated:  December 2, 2011

By:  /s/ Nina J. Ginsberg
Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Telephone:     703.684.4333
Facsimile:     703.548.3181
Email: nginsberg@dimuro.com

John D. Cline (admitted *pro hac vice*)
LAW OFFICE OF JOHN D. CLINE
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone:     415.322.8319
Facsimile:     415.524.8265
Email: cline@johndclinelaw.com

K.C. Maxwell (admitted *pro hac vice*)
LAW OFFICE OF K.C. MAXWELL
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone:     415.322.8817
Facsimile:     415.888.2372
Email: kcm@kcmaxlaw.com

**Attorneys for ROP GONGGRIJP**

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Andrew Peterson
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

John K. Zwerling, VSB No. 8201
Stuart Sears, VSB No. 71436
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA 22314
Telephone: (703) 684-8000
Facsimile: (703) 684-9700
Email: JZ@Zwerling.com
Email: Stuart@Zwerling.com

Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Telephone: 703.684.4333
Facsimile: 703.548.3181
Email: nginsberg@dimuro.com

John K. Roche
PERKINS COIE, LLP
700 13th Street, N.W., Suite 600
Washington, DC 20005
Telephone: 202-654-6200
Facsimile: 202-654-6211
Email: jroche@perkinscoie.com

Marvin David Miller
1203 Duke Street
The Gorham House
Alexandria, VA 22314
Telephone: (703) 548-5000
Email: katherine@marvinmilleratlaw.com

14

I also certify that on this 2nd day of December, 2011, I caused the following party to be served by first-class United States mail:

Christopher Soghoian (*pro se*)
Graduate Fellow, Center for Applied Cybersecurity Research
Indiana University
P.O. Box 2266
Washington, DC 20013
Telephone: 617-308-6368

By: /s/ Rebecca K. Glenberg
Rebecca K. Glenberg, VSB No. 44099
AMERICAN CIVIL LIBERTIES UNION
  OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, VA 23219
Telephone:  804.644.8080
Facsimile:   804.649.2733
Email: rglenberg@acluva.org