**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: Application of the United
States of America for an Order
Pursuant to 18 U.S.C. Section
2703(D)

United States of America,

       *Plaintiff-Appellee,*

       v.

Jacob Appelbaum; Rop Gonggrijp;
Birgitta Jonsdottir,

     *Defendants-Appellants,*

     and

Twitter, Incorporated,

       *Defendant.*

No. 11-5151

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Liam O'Grady, District Judge.
(1:11-dm-00003-TCB-LO-1)

Argued: October 26, 2012

Decided: January 25, 2013

Before GREGORY and DUNCAN, Circuit Judges, and
Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

Petition denied by published opinion. Judge Gregory wrote the opinion, in which Judge Duncan joined. Judge Wilson wrote a separate concurring opinion.

---

## COUNSEL

**ARGUED:** Aden J. Fine, AMERICAN CIVIL LIBERTIES UNION, New York, New York, for Appellants. Andrew Peterson, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Cindy A. Cohn, Lee Tien, Marcia Hofman, ELECTRONIC FRONTIER FOUNDATION, San Francisco, California, Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC., Richmond, Virginia, for Appellant Birgitta Jonsdottir; Rachael E. Meny, John W. Keker, Steven P. Ragland, KEKER & VAN NEST LLP, San Francisco, California, John K. Zwerling, Stuart Sears, ZWERLING, LEIBIG & MOSELEY, PC, Alexandria, Virginia, for Appellant Jacob Appelbaum; John D. Cline, LAW OFFICE OF JOHN D. CLINE, San Francisco, California, K.C. Maxwell, LAW OFFICE OF K.C. MAXWELL, San Francisco, California, Nina J. Ginsberg, DIMUROGINSBERG, PC, Alexandria, Virginia, for Appellant Rop Gonggrijp. Neil H. MacBride, United States Attorney, Lindsay Kelly, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

## OPINION

GREGORY, Circuit Judge:

We are called upon to determine the public's right to access orders issued under 18 U.S.C. § 2703(d) and related documents at the pre-grand jury phase of an ongoing criminal investigation. Because we find that there is no First Amend-

ment right to access such documents, and the common law right to access such documents is presently outweighed by countervailing interests, we deny the request for relief.

## I.

### A.

Title II of the Electronic Communications Privacy Act of 1986, commonly known as the Stored Communications Act ("SCA"), was enacted to protect the privacy of users of electronic communications by criminalizing the unauthorized access of the contents and transactional records of stored wire and electronic communications, while providing an avenue for law enforcement entities to compel a provider of electronic communication services to disclose the contents and records of electronic communications. Pub. L. No. 99–508, 100 Stat. 1848, 1868 (codified at 18 U.S.C. §§ 2701-2711). As one Senator remarked, the SCA was "designed to protect legitimate law enforcement needs while minimizing intrusions on the privacy of system users as well as the business needs of electronic communications system providers." 132 Cong. Rec. 14601 (1986) (statement of Sen. Leahy).

To obtain records of stored electronic communications, such as a subscriber's name, address, length of subscription, and other like data, the government must secure either a warrant pursuant to Federal Rule of Criminal Procedure 41, or a court order under 18 U.S.C. § 2703(d). 18 U.S.C. § 2703(c). Orders issued under § 2703(d) may be granted if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). This is essentially a reasonable suspicion standard.

In seeking access to records, the government need not give prior notice to the subscriber or customer. 18 U.S.C.

§ 2703(c)(3). The SCA also provides for gag orders, which direct the recipient of a § 2703(d) order to refrain from disclosing the existence of the order or investigation. *See* 18 U.S.C. § 2705(b).

## B.

This case involves the § 2703(d) orders pertaining to the Government's request for records of electronic communications relevant to an ongoing criminal investigation. The underlying facts of the investigation, which are not presently before us, relate to the unauthorized release of classified documents to WikiLeaks.org, and the alleged involvement of Bradley E. Manning, a U.S. Army Private First Class.

As part of its investigation, the Government petitioned the U.S. District Court for the Eastern District of Virginia and obtained an order pursuant to § 2703(d), from a magistrate judge ("Twitter Order"), directing Twitter, Inc. ("Twitter") to disclose records of electronic communications pertaining to Appellants Jacob Appelbaum, Rop Gonggrijp, and Birgitta Jonsdottir ("Subscribers").[1] Specifically, the order directed Twitter to provide Subscribers' names, usernames, personal contact information, account information, connection records, financial data,[2] length of service, direct messages to and from email addresses and Internet Protocol addresses for all communications between November 1, 2009, and December 14, 2010.

The issuing magistrate judge determined that prior notice "to any person" of the Twitter Order, the Government's application for the Twitter Order ("Twitter Application"), and the

---

[1] The Twitter Order also sought information pertaining to Manning and Julian Assange, WikiLeaks.org's founder. Manning and Assange did not challenge the Twitter Order or participate in litigating access.

[2] The Government subsequently discarded its request for financial information.

ongoing criminal investigation, would "seriously jeopardize the investigation." Consequently, the magistrate judge sealed the Twitter Order and Application, and directed Twitter not to disclose their existence, or the investigation to any person unless and until otherwise ordered by the court. On January 5, 2011, upon the Government's motion, the magistrate judge unsealed the Twitter Order and authorized Twitter to disclose the order to Subscribers.

On January 26, 2011, Subscribers moved the court to vacate the Twitter Order, unseal all documents relating to the Twitter Order, and unseal and publicly docket any other § 2703(d) orders on the subject of the investigation pertaining to Subscribers that were issued to companies other than Twitter ("Other § 2703(d) Orders").

Following a hearing on the motions, the magistrate judge issued a memorandum opinion and an order denying the motion to vacate, and partially granting the motion to unseal as follows: it (1) granted the motion to unseal pleadings filed during the litigation over the Twitter Order; (2) denied the motion to unseal the Twitter Application; (3) denied the motion to unseal the Other § 2703(d) Orders; and (4) took under advisement the issue of public docketing of the Other § 2703(d) Orders and related motions. In ruling on the motion to unseal, the magistrate judge determined that there was no First Amendment right to access the Twitter Application, and the Other § 2703(d) Orders and their applications. The magistrate judge also determined that the common law presumption of access to judicial records was overcome because the sealed documents contained "sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation."

While Subscribers' request for public docketing was pending, the Eastern District reviewed and changed the docketing procedures of its clerk's office. Specifically, the Eastern District instituted new case-numbering procedures by creating an

"EC" docket for recording cases pertaining to requests for pen registers and § 2703(d) orders. The EC docket is a "running list" that is publicly available from the district court's clerk's office. It indicates all assigned case numbers, the date of assignment, the presiding judge, and whether the case is sealed. However, it lacks individual docket entries for all types of documents filed in each case and the dates of such entries.

Following the creation of the EC docket, the magistrate judge denied Subscribers' public docketing request, reasoning that "there exists no right to public notice of all the types of documents filed in a sealed case." Subscribers then filed objections to the magistrate judge's sealing and docketing decisions with the district court.

In reviewing the magistrate judge's decisions, the district court applied a clearly erroneous or contrary to law standard of review and overruled Subscribers' objections. The district court stated that it "also conducted a *de novo* review and f[ound] that [the magistrate judge]'s findings and orders survive a more demanding scrutiny." *In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114, 122 n.7 (E.D. Va. 2011). The district court then affirmed the magistrate judge's sealing and docketing decisions.

Subscribers appealed.

## II.

We first address the basis for our jurisdiction over this matter. We have stated "[m]andamus, not appeal, 'is the preferred method of review for orders restricting [access] to criminal proceedings.'" *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989) (quoting *Wash. Post Co. v. Soussoudis*, 807 F.2d 383, 388 (4th Cir. 1986)). As mandamus is the preferred method for reviewing courts' orders restricting access to criminal proceedings, we treat Subscribers' appeal as a petition for

mandamus, and we have jurisdiction under the All Writs Act, 28 U.S.C. § 1651. *See Wash. Post Co.*, 807 F.2d at 388.[3]

"[W]rits of mandamus are to be issued only in extraordinary circumstances." *Id.* at 393 (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964)). To successfully obtain mandamus relief, a petitioner must show that "he has a clear and indisputable right to the relief sought," and "there are no other adequate means to attain the relief he desires." *In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001) (citations omitted). For the reasons that follow, Subscribers fail to establish they have a clear and indisputable right to the relief sought and therefore, we deny the petition for mandamus.

### III.

Subscribers raise two substantive issues on appeal: (1) whether the district court erred in refusing to unseal the Other § 2703(d) Orders and derivative motions and orders concerning such orders; and (2) the sufficiency of the docketing system employed by district courts in the Eastern District of Virginia.[4] Overlaying these two issues is whether the district court applied the proper standard of review to the magistrate judge's decisions. We first address the procedural issue, and then address the substantive issues in turn.

### A.

Subscribers contend that in reviewing the magistrate judge's decisions, the district court erred by applying a

---

[3]We note that even if we treat this request for relief as an appealable collateral order under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), we would reach the same result.

[4]We do not address the following issues abandoned on appeal: (1) the denial of the motion to vacate the Twitter Order; (2) the denial of the motion to unseal the Twitter Application; and (3) the denial of the motion to unseal *applications* for the Other § 2703(d) Orders.

"clearly erroneous or contrary to law" standard, as opposed to
a *de novo* standard of review. We have held that a magistrate
judge's power to control access to judicial documents or
docket sheets derives from the district court's inherent power
to control access. *See Wash. Post Co. v. Hughes*, 923 F.2d
324, 326 n.2 (4th Cir. 1991) ("A magistrate's power to seal
or unseal documents derives from the district court's power to
take such actions"); *see also ACLU v. Holder*, 673 F.3d 245,
256 (4th Cir. 2011) (whether to seal a docket sheet is within
the district court's inherent power).

A magistrate judge's power to control access falls under the
"additional duties" prong of the Federal Magistrates Act, 28
U.S.C. § 636(b)(3), and decisions under this prong are
accorded *de novo* review by the district court. *Hughes*, 923
F.2d at 326 n.2 (citing *Matthews v. Weber*, 423 U.S. 261, 273
(1976)). Consequently, in this proceeding, both the magistrate
judge's sealing and docketing decisions fall within the "addi-
tional duties" provision of § 636(b)(3), and are reviewable *de
novo*. Upon a careful examination of the district court's rul-
ings, we hold that the district court applied the appropriate
standard of review to the magistrate judge's decisions.[5]

## B.

Subscribers next contend that the district court erred in per-
mitting the Other § 2703(d) Orders and related documents to
remain sealed because these documents are subject to the
right of access. The right of public access derives from two
independent sources: the First Amendment and the common
law. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567,
575 (4th Cir. 2004). "The distinction between the rights of
access afforded by the common law and the First Amendment

---

[5]As we noted in our discussion of the facts, although the district court
purported to apply a "clearly erroneous or contrary to law" standard, it
nevertheless found that the magistrate judge's decisions survived *de novo*
review.

is 'significant,' because the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" *Id.* (quoting *Goetz*, 886 F.2d at 64; *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988)). Specifically, the common law presumes a right to access *all* judicial records and documents, but this presumption can be rebutted if "the public's right of access is outweighed by competing interests." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984); *see United States v. Moussaoui*, 65 F. App'x 881, 886 (4th Cir. 2003) (unpublished). On the other hand, the First Amendment provides a right of access only to *particular* judicial records and documents, and this right yields only in the existence of a "compelling governmental interest . . . [that is] narrowly tailored to serve that interest." *Va. Dep't of State Police*, 386 F.3d at 575.

i.

For a right of access to a document to exist under either the First Amendment or the common law, the document must be a "judicial record." *Goetz*, 886 F.2d at 63-64. Whether a certain document is a "judicial record" is a question of law, and we determine it *de novo. See id.*; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006).

Although we have never explicitly defined "judicial records," it is commonsensical that judicially authored or created documents are judicial records. Thus, we have no difficulty holding that the actual § 2703(d) orders and subsequent orders issued by the court are judicial records.[6]

---

[6]Citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995), the Government contends that § 2703(d) orders themselves are not "judicial records" because they are "not useful to the judicial process," and they are merely a vehicle used to obtain relevant business records. This argument is unavailing because *Amodeo* applies to documents filed with the court, not by the court. *See Amodeo*, 44 F.3d at 145 ("We think that the mere filing of a paper or document *with* the court is insufficient to render that paper a judicial document subject to the right of public access." (emphasis added)).

With respect to whether the derivative § 2703(d) *motions* are "judicial records," our prior cases guide this inquiry. In *Rushford*, we held that discovery documents filed in connection with a dispositive motion, such as a motion for summary judgment, were subject to the right of access because "summary judgment adjudicates substantive rights." 846 F.2d at 252. In *In re Policy Management Systems Corp.*, we refrained from ascribing the First Amendment right of access to documents not considered by the court but filed with a motion to dismiss, reasoning that they "do not play any role in the adjudicative process." 67 F.3d 296 (4th Cir. 1995) (unpublished table decision). Taken together, *Rushford* and *In re Policy Management Systems Corp.* hold that documents filed with the court are "judicial records" if they play a role in the adjudicative process, or adjudicate substantive rights. We adopt that definition. In doing so, we are in harmony with the decisions of several of our sister circuits. *See, e.g., In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002) (examining the common law presumption of access coextensively with the definition of "judicial records," and holding that the presumption attaches to "those materials which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication." (citation omitted)); *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) ("[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process."); *Amodeo*, 44 F.3d at 145 ("[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). Applying this definition, the derivative § 2703(d) motions are "judicial records" because they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders. *See also Goetz*, 886 F.2d at 63-64 (holding search warrant affidavits are "judicial records" because they are considered by a judicial officer in determining whether to issue a warrant, and are available in a subsequent proceeding if sufficiency is challenged).

Because we conclude that § 2703(d) orders[7] are "judicial records," the common law presumption of access attaches to these documents. However, we next examine whether, in addition to the common law presumption, a First Amendment right of access to these documents also exists.

ii.

To determine whether the First Amendment provides a right to access § 2703(d) orders and proceedings, we employ the "experience and logic" test, asking: "(1) 'whether the place and process have historically been open to the press and general public,' and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question." *Goetz*, 886 F.2d at 64 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1988)). Here, neither prong is satisfied.

Subscribers concede that there is no long tradition of access specifically for § 2703(d) orders, given that the SCA was enacted in 1986.[8] However, they argue that under *Press-Enterprise*, where a relatively new process is at issue, courts focus on the logic prong. Our post-*Press Enterprise* precedent makes clear that both the experience and logic prongs are required. *See Goetz*, 886 F.2d at 64 (stating a conjunctive test); *see also United States v. Gonzales*, 150 F.3d 1246, 1258 (10th Cir. 1998) (citing *Goetz* for the proposition that some courts adopt the approach that *Press-Enterprise* requires satisfaction of *both* prongs).

---

[7] From here, § 2703 orders refers to Other § 2703 Orders, and subsequent related motions and orders.

[8] Subscribers alternatively argue that a § 2703(d) order is a judicial order, and there is "an exceedingly long history of access to judicial opinions and orders." This interpretation of the First Amendment right of access is too broad, and directly contrary to our holding that this right extends only to "'*particular* judicial records and documents.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)).

Even assuming only the logic prong is required, this prong is not met.[9] The logic prong asks whether public access plays a significant role in the process in question. The § 2703(d) process is investigative, and openness of the orders does not play a significant role in the functioning of investigations. Section 2703(d) proceedings consist of the issuance of and compliance with § 2703(d) orders,[10] are *ex parte* in nature, and occur at the investigative, pre-grand jury, pre-indictment phase of what may or may not mature into an indictment. Pre-indictment investigative processes "where privacy and secrecy are the norm" "are not amenable to the practices and procedures employed in connection with other judicial proceedings." *See In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000).

Subscribers contend that transparency of § 2703(d) orders and motions, which are "the very foundation of our judicial system," "would ensure fairness, decrease bias, improve public perception of the justice system, and enhance the chances that the orders are well-justified and not overbroad." We are not persuaded by this argument because in *Press-Enterprise*, the Supreme Court noted:

---

[9]The experience prong also fails because § 2703(d) orders are most analogous to sealed or unexecuted search warrants and grand jury proceedings for which traditionally, there is no history of access. *See Goetz*, 886 F.2d at 64-65. Moreover, where the Government "has always been able to restrict access" to § 2703(d) orders by requesting a sealing order, regardless of the statutory default, the lack of historical access argument is not undermined. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1989) ("Th[e] general availability [of post-execution warrant materials], does not undermine the government's claim [where the government] has always been able to restrict access to warrant materials by requesting a sealing order, which courts have granted freely upon a showing that a given criminal investigation requires secrecy."). As such, there is no history of access to § 2703(d) orders.

[10]Section § 2703(d) proceedings may also consist of a motion by the recipient electronic communications provider to quash or modify a § 2703(d) order, "if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider." 18 U.S.C. § 2703(d).

Although many governmental processes best operate under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."

478 U.S. at 8-9 (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)). Section 2703(d) proceedings can be likened to grand jury proceedings. In fact, they are a step removed from grand jury proceedings, and are perhaps even more sacrosanct. Proceedings for the issuance of § 2703(d) orders are also like proceedings for the issuance of search warrants, which we have noted are not open. *See Goetz*, 886 F.2d at 64 (observing that the Supreme Court has twice "recognized that proceedings for the issuance of search warrants are not open"). Because secrecy is necessary for the proper functioning of the criminal investigations at this § 2703(d) phase, openness will frustrate the government's operations.[11] Because § 2703(d) orders and proceedings fail the logic prong, we hold that there is no First Amendment right to access them.

### iii.

We next consider whether the common law presumption of access to § 2703(d) orders requires access. This presumption is not insurmountable, and access may be denied if certain substantive and procedural preconditions are satisfied. *See Goetz*, 886 F.2d at 65 ("[T]he press and the public have a common law *qualified* right of access to judicial records."

---

[11] Further evidence that the logic prong favors sealing is that prior notice to the subscriber or customer is not statutorily required, and the government can request a gag order to prevent the recipients of § 2703(d) orders from disclosing the existence of the orders and investigations. 18 U.S.C. §§ 2703(c) & 2705(b).

(emphasis added)). In undertaking this inquiry, we note that the common law right of access to judicial records is "committed to the sound discretion of the judicial officer who issued the [§ 2703(d) orders]." *Id.*

### 1.

To substantively overcome the common law presumption of access to § 2703(d) orders, a court must find that there is a "significant countervailing interest" in support of sealing that outweighs the public's interest in openness. *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003) (citing *Rushford*, 846 F.2d at 253).[12] In balancing the government's interest and the public's right to access, a court may consider the following factors: "[1] whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; [2] whether release would enhance the public's understanding of an important historical event; and [3] whether the public has already had access to the information contained in the records." *In re Knight*, 743 F.2d at 235.

---

[12]We reject Subscribers' contention that the magistrate judge erred by applying an "outweigh" standard, as opposed to a "heavily outweigh" standard in determining whether the common law right of access must yield to the government's interest. Subscribers rely on *Virginia Department of State Police* where we stated: "'This presumption of access, however, can be rebutted if countervailing interests *heavily* outweigh the public interests in access,' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" 386 F.3d at 575 (quoting *Rushford*, 846 F.2d at 253) (emphasis added)). Neither *Goetz*, *In re Knight*, nor *Moussaoui*—which all relied on *Nixon*—use a "heavily outweigh" standard. *Rushford*, which *Virginia Department of State Police* relies on, also relied on *Nixon*. Moreover, *Rushford* subsequently states: "The party seeking to overcome the presumption bears the burden of showing some significant interest that *outweighs* the presumption." *Rushford*, 846 F.2d at 253. As such, to overcome the common law presumption of access, the government's interests must merely outweigh the public's interest.

Subscribers contend that the Government lacks a legitimate interest in continued sealing, and the magistrate judge "improperly relegated," and failed to weigh the public's "strong" interest in having access to the § 2703 orders and motions. Among the identified public interests, Subscribers state an interest in: participating in a matter of national importance, which is the ongoing debate about WikiLeaks' publications; understanding the nature and scope of the government's electronic surveillance of internet activities; and to the extent the § 2703 orders have not been complied with, providing Subscribers with an opportunity to challenge the orders to preclude a violation of their constitutional rights.

Subscribers' contentions fail for several reasons. First, the record shows that the magistrate judge considered the stated public interests and found that the Government's interests in maintaining the secrecy of its investigation, preventing potential subjects from being tipped off, or altering behavior to thwart the Government's ongoing investigation, outweighed those interests.

Further, we agree with the magistrate judge's findings that the common law presumption of access to § 2703 orders is outweighed by the Government's interest in continued sealing because the publicity surrounding the WikiLeaks investigation does not justify its unsealing. The mere fact that a case is high profile in nature does not necessarily justify public access. *See United States v. McVeigh*, 119 F.3d 806 (10th Cir. 1997) (upholding the sealing of documents in the Oklahoma City bombing trial); *Moussaoui*, 65 F. App'x at 887 n.5 (upholding sealed classified documents related to the terrorist attacks on September 11, 2001). Additionally, Subscribers' contention that the balance of interests tips in the public's favor because the Government approved the disclosure of the existence of its investigation by moving the district court to unseal the Twitter Order is adequately counterbalanced by the magistrate judge's finding that the "sealed documents at issue

set forth sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation."

The magistrate judge also found that "there are legitimate concerns that publication of the documents at this juncture will hamper the investigatory process." Regardless of the execution of, or compliance with, the Other § 2703(d) Orders, to allow the public or Subscribers access to the orders after such a finding is an improper means of circumventing the SCA's clear assessment that in some instances, non-disclosure of the existence of the orders is warranted. *Accord* 18 U.S.C. § 2705(b). As such, the magistrate judge did not abuse her discretion in finding that the Government's interests are significantly countervailing, and outweigh the public's common law presumption of access. Hence, the substantive requirements to sealing are met.

2.

Turning to the procedural requirements, in determining whether to seal judicial records, a judicial officer "'must consider alternatives to sealing the documents' which may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the government's motion to seal." *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005) (quoting *Goetz*, 886 F.2d at 65–66). "Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." *Va. Dep't of State Police*, 386 F.3d at 576.

Subscribers' procedural contentions are that the magistrate judge failed to: (1) provide individualized sealing analysis for each document; and (2) consider alternatives to sealing such as redactions. These arguments belie the record. The magistrate judge made a measured and specific determination as to sealing, and in the memorandum opinion, "order[ed] that only documents specified below shall be unsealed." Later in the

opinion, the magistrate judge outlined the rationale for unseal-ing certain documents, while refusing to unseal others, and approved certain redactions and permitted the disclosure of redacted documents. As such, the magistrate judge individu-ally considered the documents, and redacted and unsealed cer-tain documents, satisfying the procedural requirements for sealing.

Because both the substantive and procedural requirements are met, the magistrate judge did not err in sealing the § 2703(d) orders. Since we conclude that there is no First Amendment right to access § 2703(d) orders, and the common law right of access is outweighed by the Government's inter-est in maintaining the ongoing investigation, Subscribers lack a clear and indisputable right to the relief sought. Thus, we deny the petition for mandamus.

## C.

Subscribers next proceed with their challenge to the docket-ing procedures in the Eastern District of Virginia, arguing that the docket sheets for cases on the EC docket fail to identify, through individual docket entries, the type and date of matters occurring in each case. Docket sheets exist to "provide a map of proceedings in the underlying case," ensuring "meaningful access" to criminal proceedings. *Hartford Courant Co. v. Pel-legrino*, 380 F.3d 83, 95 (2d Cir. 2004); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993). Hence, Subscrib-ers essentially seek notice and an opportunity to participate, or be heard, in § 2703(d) related proceedings.

As we stated above, there is no First Amendment right of access to § 2703(d) proceedings. While "[w]e agree that . . . the public must ordinarily be given notice and an opportunity to object to sealing of public documents," *Media Gen. Opera-tions*, 417 F.3d at 429, we have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps,

which are all akin to grand jury investigations, must be publicly docketed. *See In re Sealed Case*, 199 F.3d at 525 (citing federal public docketing cases and noting that none has required such in the grand jury context). In fact, none of the cases Subscribers cite supports such a proposition. *See United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029-30 (11th Cir. 2005) (*post-indictment* secret docketing procedures are unconstitutional); *Pellegrino*, 380 F.3d at 95 (public docketing is required where there is a First Amendment right to access the related criminal proceeding); *In re State–Record Co.*, 917 F.2d 124, 128–29 (4th Cir. 1990) (per curiam) (secret docketing of criminal proceedings related to *indicted* public officials violates First Amendment right to access). We refuse to venture into these uncharted waters, and as such, we refrain from requiring district courts to publicly docket each matter in the § 2703(d) context. We therefore deny Subscribers' petition for mandamus.

## IV.

For the reasons above, we conclude that Subscribers are not entitled to the relief they seek. Accordingly, we deny the petition for mandamus. We note that Subscribers are not forever barred from access to the Other § 2703(d) Orders and derivative documents because at some point in the future, the Government's interest in sealing may no longer outweigh the common law presumption of access. At such point, the Subscribers may seek to unseal these documents.

*PETITION FOR MANDAMUS DENIED*

WILSON, District Judge, concurring:

I concur in the opinion in all respects except the conclusion that there is a presumed common law right of access to § 2703(d) judicial orders and motions separate and apart from a subscriber's individual right of access. Courts cannot presume common law rights and remedies that conflict with a

statutory scheme or a statute's essential purpose. In my view, the presumption here of a common law right of access does precisely that.

"[A]brogation of common law principles is appropriate when a contrary statutory purpose is evident." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 334 (4th Cir. 1997); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978))). Here, the challenged orders and documents all arise under Title II of the Electronic Communications Privacy Act of 1986, which is commonly known as the Stored Communications Act.[1] The Act was intended "to update and clarify federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S. Rep. No. 99-541, at 1 (1986). Congress recognized that technological advancements had "expanded dramatically" the opportunity for the government to intrude in the lives of its citizens. *Id.* at 2. Constitutional jurisprudence, however, afforded little protection to the privacy interests of persons whose information and records were "subject to control by a third party computer operator." *Id.* at 3. Congress was concerned that information in the hands of third parties might "be open to possible wrongful use and public disclosure by law enforcement authorities as well as unauthorized private parties." *Id.*

In the face of rapidly evolving technology, the Act attempted to establish a framework governing the acquisition and dissemination of this often highly private information, not only by government officials but by private individuals and entities as well. *See* 18 U.S.C. § 2701. It prohibits service providers from voluntarily disclosing stored customer communi-

---

[1]The Act amended Title III of the Omnibus Crime Control and Safe Streets Act of 1968—the federal wiretap law.

cations and records except as specifically authorized, *see* 18 U.S.C. § 2702(a)–(b), and details the procedures the government may employ to obtain stored information from a third-party provider, depending upon whether the government is seeking the contents of a stored communication, or non-content information. *See* 18 U.S.C. § 2703(a)–(c). A "content" inquiry to a provider that is not itself authorized to access content requires either a warrant or advance notice to the subscriber when the content is 180 days old or less.[2] *See* 18 U.S.C. § 2703(b). The advance-notice requirement expressly applies to administrative subpoenas, grand jury subpoenas, trial subpoenas, and court orders for disclosure under 18 U.S.C. § 2703(d). 18 U.S.C. § 2703(b). But despite the seemingly broad advance-notice requirement, the statute provides that the court may delay notice pursuant to § 2705 if, in the case of a court order, the court determines that there is reason to believe that the notification of the existence of a court order may have an "adverse result" (as that term is further defined by the statute) or, in the case of an administrative or grand jury subpoena, a supervisory official certifies in writing that advance notification may have such an effect. *See* 18 U.S.C. § 2705(a)(1)(A)–(B). The government also may apply to the court under specified circumstances for an order commanding a provider "to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).

When the government seeks something other than content from a provider, it may do so if it obtains a warrant, court order, or consent of the subscriber or customer; submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud; or simply seeks essentially billing-related or business records from the provider (such as names, addresses, local and long-distance tele-

---

[2]"Under the [Act], an email is presumed to be abandoned after 180 days . . . ." S. Rep. No. 112-258, at 3 (2012).

phone connection records, service periods, telephone or instrument numbers, or means of payment). *See* 18 U.S.C. § 2703(c)(1)–(2). When the government seeks what are essentially business records, it is not required to provide notice to the subscriber or customer. *See* 18 U.S.C. § 2703(c)(3). Finally, to obtain a court order the government must offer "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

The motions that support these § 2703(d) orders, the orders themselves, and the very existence of these orders implicate or directly convey highly private information and confirm the existence of a criminal investigation. Yet an essential purpose of the Electronic Communications Privacy Act is the protection of the privacy interests of subscribers or customers in their electronically stored information and records. To presume a common law right of access to these records because the government has obtained an order from a federal court—which acts in these cases as a limited backstop against government overreaching—strikes at the Act's essential purpose. The government's monitored intrusion of the citizen's private interests would thereby justify privacy intrusions by others. Rather than serving as a check against invasions of privacy, the Act would serve to magnify them. Consequently, I believe that a common law right of access is squarely at odds with the Act's essential purpose.

Not only does the presumption of a common law right of access strike at the Act's essential purpose, it entangles itself with the Act in incongruous ways. The Act provides, for example, when notice will be given to an account holder or subscriber, when it need not be given at all, and when the court may delay notice. But when there is a public right of access, this court has prescribed very particular procedures that the district court must follow when sealing docu-

ments—including the provision of some form of public notice, a consideration of less drastic alternatives, and factual findings to the effect that the circumstances of the case warrant overriding the public's presumptive right of access. *See Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005); *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir. 2000). Congress has, however, within the confines of the Act, specified when notice to the subscriber is required and when it is not. Surely Congress did not intend that courts wrestle in every instance in the course of an investigation with public notice and sealing alternatives in spite of the Act's detailed individual notice provisions. Surely the public can have no greater right of access than the subscriber to matters involving the subscriber's own electronic information.

I think it indisputable that Congress' primary concern in passing the Electronic Communications Privacy Act of 1986 is revealed by the Act's very name. Congress sought to protect the privacy interests of individuals in electronically stored information. It sought to do so by placing a judicial officer between law enforcement and the acquisition of that information. It is, to say the least, an unintended consequence that when Congress inserted a judicial officer into the mix, a common law right of access resulted that would require a subscriber to fight publicly to safeguard that which Congress deemed private. In my view, a common law right of access irreconcilably conflicts with the statutory scheme of the Electronic Communications Privacy Act.